v. Torrez. Mr. Marcus, you first. Good morning. Thank you, Your Honors. My name is Lawrence Marcus with the New Mexico Attorney General's Office. I'm here on behalf of Secretary Oliver and Attorney General Torrez. With me at Council table is Alex Tucker. At the outset, I would like to request three minutes for rebuttal. In this appeal, the State of New Mexico asks this Honorable Court to allow it to protect the privacy of those who register to vote, to carry out that right and duty that is so fundamental to our Republic. New Mexico strikes a good balance between the availability of information and transparency on the one hand and protecting privacy on the other. It makes voter data available on the condition that the person seeking the data signs an affidavit that the voter data will not be used, shall be used only for governmental and election campaign purposes only and shall not be made available or used for unlawful purposes. As a foundational question, wasn't the data here used for election purposes? It was posted on the Internet, which once it's posted on the Internet, once it's out there, it can be used for whatever purposes. But that's not what the statute says. I think the statute that you just read is the recipient of the data, and that would be VRF, whether or not they used it for election-related purposes. Somebody else may use it downstream for whatever reason that they want. That's not regulated under the state law, right? The statute uses a passive voice to describe that the data shall not be used, not that the recipient shall not use it. Okay, so even if VRF complies with the statute, they could be penalized if that correctness uses the data for a non-election-related purpose? Because they posted it on the Internet, and once it's out there, it's out there. When you say privacy, it helped me if I knew exactly what you mean by that, because there's certain information about voters that I wouldn't understand, social security numbers and so forth. Is that what you're talking about? They aren't putting social security numbers online. What they are putting online is they're putting your name and address. That's probably the easiest way to find someone's name and address online, in all honesty. There are other ways of doing it, I realize that, but that's probably the easiest way to do it. And in addition, they're putting your party affiliation and your voting history, not who you voted for, obviously, but all the times that you voted, whether you voted in the primary in one particular year or the general election, they have that all listed on there. And if someone runs for office, they can pay a certain fee and get the list so they can send out their mailers and so forth? It contains that very information, right? They can get that information for their campaign purposes, that's right. Is it your understanding that you've provided all of the data that's been requested by VRF at this point? We have complied with all of the requests at this point, Your Honor. On access itself, I assume that you would argue that that is not moot, right? Ostensibly, the case began by VRF's argument that you were withholding access to data. You provided all of the data. The dispute now is whether or not they can publish the data on the Internet, correct? The data has been published on the Internet, Your Honor. But the question is whether the statute... The new data that has been provided to them, whether or not they are going to be subject to the condition under state law, right? Right, yes. So if we decide against you on preemption, that the state statute is preempted under the Voter Registration Act, would you concede at that juncture that there is no prohibition, a statutory prohibition, there's nothing to prohibit VRF from publishing that data on the Internet? If the adjudication is that the state statute is preempted under the NVRA? If it has to be, if we have to give them this data? Well, you did give them the data. So my question is, so you gave them the data, so now the only question is whether they can publish it, right? Right. And so there's two arguments. One is preemption. Well, there's three arguments. The First Amendment, the due process, viewpoint discrimination, and now the last one is the one that I want to omen on, preemption under the NVRA. If the state statute is preempted under the NVRA, can they publish the data? We would argue that we could still prevent them from publishing the data because the NVRA concerns access rather than use. Under the state statute?  But if we decide that the state statute is preempted by the NVRA, we would be rejecting your argument. In other words, we would be saying that the NVRA provides an unqualified right to access, and that supersedes a state statute that would condition access on conditions that are not present in the NVRA, right? I mean, that's the whole agreement. Unqualified access, yes, that would preempt the entire statute. Really, this is a long-winded way of asking, so if we decide against you on preemption, we really don't have to decide viewpoint discrimination, First Amendment, or due process? It would render those, the constitutional compliance doctrine would probably render those moot. So what VRF did, they posted this information online, and they have challenged the statute, as we discussed, on both the NVRA, the public disclosure provision of the NVRA, and under the First Amendment, several First Amendment arguments, including as applied and facially. Are you still making a standing argument? We are making a standing argument pertaining to the NVRA. That's right. Based on new case law that was entered in a couple of other circuits. Doesn't the NVRA provide a private right of action that was the basis for this lawsuit? It provides a private right of action, but there has to be an injury in fact, and both the Third and the Sixth Circuits have stated that if you're not seeking the data for a purpose that is promoted by the NVRA, you don't have an injury in fact, you don't have standing. Doesn't the Attorney General here think that they've committed a crime, prosecutable crime? It's been referred to the Attorney General for investigation, no prosecutions have actually commenced, so this is still being investigated. Does voters have a credible threat of prosecution that would confer pre-enforcement standing here? You can disavow that the Attorney General is going to prosecute and that might help, but that's about what it would take. Under the First Amendment, my understanding is that these other, under the First Amendment there may be some standing, but under the NVRA, if they're seeking it for a purpose supported by the NVRA, and there's a credible threat of prosecution, then there would be an injury in fact. In this case, the question is whether they can get the data going forward. They are challenging the NVRA and the question is whether they can get the data going forward. I am sorry, I am totally at a loss to understand your standing argument. I read those cases and they're First Amendment cases, they're not NVRA, they're not denying standing based on the NVRA, and you referred to your brief-in-chief in the earlier appeal prior to the preliminary injunction, so I looked for your argument there because you didn't have it in your 28J letter and you didn't argue standing in your brief-in-chief. There was a supplemental brief that referred to the chilling of a right, and so I assumed that your standing argument was going to be the opposite of what you just told Judge Tempevich. I assumed it was going to be on the First Amendment claim, not the NVRA. You just got through saying that they can't publish it. Well, why isn't that an injury in fact? That's what they're saying, we want to publish the data. They've already published the data that they've been given. The question is whether they can continue to request the data going forward unconditionally. So you're saying that voter data, they never withdrew that from the Internet? They never withdrew it, but they put it back online once they got the preliminary injunction is my understanding. Why does the voter data, why isn't that necessary for whatever conclusion voters draw? Why isn't that necessary to essentially show its work? And then the proper response of New Mexico is to say, as it did, you're not comparing the correct time periods or something, and then the public decides. Why can't that come out and there be a full discussion? That's what I'm not understanding. Because you can release numbers, you can show what the showing its work was. Well, we counted, you don't need the actual names, addresses, party affiliation, voter history. Well, you need the voter history, but you can just do that as an aggregate, as an anonymized aggregate. You can say, well, according to our records, we have 9,342,000 people who voted in the last election. But according to the Secretary of State's final certification of the ballots, there were 3,000 more. And they can say that. They can certainly say that. But they can say that without listing everybody's name in a non-anonymized. What's the perceived harm if my name is on the list that I voted in an election, even my affiliation? What's the harm in that? If you're a member of a party that's perhaps a small minority in whatever community you live in, maybe you don't want that getting out. And there have been some issues of voter harassment in Otero County. For instance, they didn't necessarily use VRF's data, but that just demonstrates the importance of privacy. So that's it? Privacy, yes. The interest of the voters in privacy, yes. Yes, Your Honor. The Bellows case addressed that privacy argument and basically said that Congress struck a different balance under the Registration Act. And that kind of answered the question. What's the flaw in Bellows' preemption analysis? Well, they said we don't want to decide. We don't want to weigh these two interests. That's what they said. We don't want to weigh, but by making this decision, they have to weigh the interest. There's no way around that. No, they're saying Congress did the weighing. The case says that Congress did the weighing, and it's not for the court to invalidate that policy. No, but they weighed it anyway. They said that the privacy is a lower concern. But if you look at both the findings of Congress and the purposes, it seems like encouraging voter registration was of much greater importance under the NVRA. Is New Mexico a sore thumb here? The voters references its work in 33 states, and I didn't see where it really pulled the string to say New Mexico is the only one that does this, but is New Mexico the only one or in a small minority that are this restricted? I don't know about that. Well, there was a Maryland statute that was considered in the Fusaro case, Fusaro v. Kogan, and that, if anything, was even more restrictive than the one in New Mexico. They found preemption there also, didn't they? Only because it restricted the request for data to Maryland-registered voters. It did not concern the actual use restrictions. You wanted to save some rebuttal time? Yes, thank you very much. Good morning. I'm Eddie Grime of Graves Garrett Grime, Kansas City, Missouri, here on behalf of Apelli and Cross Appellant Voter Reference Foundation. With me is Matthew Miller of my office. May it please the Court, I think one way I want to start is to clarify a few things procedurally that seem important, and they were raised just a moment ago with my brother. And I think just clarifying the sort of order of operations between the NVRA and the First Amendment in this case is important, because looking back, I've just said we're a cross appellant, but I think it's now clear, looking back at the case, that this court could affirm. Maybe one way to say this is we're asking for the court to affirm the district court in this case. If it does that, then in fact, we will have received all the relief to which we are entitled. Our injuries would have been redressed. And we need not reach the viewpoint discrimination or the broader First Amendment vagueness? That's correct. I mean, we would sure love to have a decision on that, but you're a federal court, and we know that that's not... Have you already received all of the data that you've requested? To date, I believe we have. There could be some pending requests, but we've gotten the data. Now, what's happened, and you can see this in the record, is that New Mexico has said, we're giving you this data, we're answering your NVRA letter, but we're giving this to you under IPRA, which is their state open records law. And so we don't think the matter is moot. We think that if the case were to go away, we'd be right back where we started. And I think it's on page eight of the opening brief for the state. They've said, we haven't disclaimed an interest in prosecuting you. And just we heard here today again, they were given a chance to say, will you pull back on that? And they haven't. And so we think we're very much at risk for being prosecuted, even though as the district court found, if you overlay the three statutes as they existed at that time, there's nothing in there that says there's actually a blanket ban on sharing the data. There's nothing in there that says you can't post it on the Internet in the way that we've done it. And so really this turned out to be just sort of an office policy that was articulated throughout the litigation, and that changed as the course of the litigation went, even before the statute was amended. So as I think we've laid out, there actually is a statute now that says you can't publish on the Internet. How does revealing publishing, the name, the address, the affiliation, protect integrity of the electoral process? How does that match up? Well, so we had some testimony about this actually back at the preliminary injunction hearing. It's part of the trial record. We actually had Gina Swoboda, who's the elections director for VRF, walk through how this how this helps. For one, we are able to, you know, we're able to have voters who are actually interested, who live on a block. And, you know, you can actually search for just your block, and you can say who all is listed as being a registered voter on this block. And if you see an older couple that, you know, passed away a few years ago, I mean, that's how you can begin to chip away at inaccuracies. But if you don't have the name, if you don't have the address, there's a problem. One thing that counsel didn't mention was birth year. I should mention that's something else. Not date of birth, but birth year, and that would cure father and son issues. But that's how. I mean, basically, an individual can go on there, and the court could go on there today. I think the address is in evidence. The Web site's in evidence. And you can search for yourself. You can search for people you know. You can search for a community. And without the names, you just the people who know everybody else, who know where they live, can't use the information. You think New Mexico could constitutionally, though, restrict access to that data if it shows? I mean, you know, here you're fighting that, you know, they've created a database you want to access. But let's say their database is just going to be nothing. Name only. Sure. Maybe name only and then your unique number. Actually, many answers to that question. I mean, first, they couldn't actually have a database like that under federal law, because now under the NVRA and HAVA, they have to have an electronic database with more information. That's a federal statute. That's a federal statute. That's not your question, I understand. And so they would say, and let's say that you could read the public disclosure provision to only require disclosure of name and ID number. Let's say that Congress even went and amended the statute or something like that. I mean, there's no First Amendment right of access to the data. So we're not claiming the First Amendment gives us right of access. Now, where we'd be back in trouble again is if the Secretary of State said, well, we'll let political parties have it. And, you know, the professional political operatives who we trust. But we don't want to let these other kind of groups have that information. Then we'd be back into discrimination and providing the access. That's a little different issue. It's a different issue. Kind of a fundamental data creation. That's right. That's right. So I wanted to emphasize this also, because the political speech question, I understand the court may or may not reach that, but it seems important. The actual data portal that VRF uses that you could go on today and you could click on your state or you could just search for your address across the country. What it says at the very top of that Web site is the purpose of this Web site is to provide public access to official government data pertaining to elections, including voter registration rules with a goal of encouraging greater voter participation in all 50 states. Our system of government is based upon citizen participation. We believe the people in effect own the data and have a legal right to see it in an understandable and transparent form. Let freedom ring. And so this messaging is throughout the presentation of data. And in fact, after you go and review things, if you have a problem, there's even a little tool kit on the Web site that tells you, here's how you go to Secretary Oliver and raise your concerns. Or here's how you go to another local official. It kind of walks you through the process. So I think one thing I want to leave the court with, I'm happy to answer more questions if there are more questions, but an important point I want to leave the court with is we don't have to assume that these different goals in the NVRA are at war with each other. We don't have to assume that. The record that they are at war with each other is really not here. Congress certainly might take opposing goals and try to reconcile them. And I mean, that's how statutes get passed. But in this case, I don't know that we can say that because our position, and I think it would be borne out, is that when people have a greater confidence in the integrity of the system, they're more likely to register to vote. They're more likely to participate. I understand the argument is that they're worried about privacy and people don't want others to know that they voted. But we don't live in that kind of a system. Who you vote for is private. But the fact that you've joined this political community and said, I'm going to throw my hat in the ring and I will be casting a vote, that is not something that's private. And so we think the goals all go together. And I'm happy to take... Yeah, I think that's true, although some jurisdictions are going to opt out. The system apparently New Mexico has for domestic violence victims. Is there any other category that can be excused from the dissemination of the data? Yes, the answer is a little bit awkward, but judges and their family members can opt out. And they often do. And so we'll recognize opt outs for those reasons. The state could expand or contract that group of voters that might get special protection. To answer Judge Phillips' questions, are there other states besides Maryland and New Mexico that have gone this path? Well, I think we actually do publish Maryland data today. I should know that. I don't quite know, but I think that part of our little map is colored red. But I would say that almost every state does have a safe at home or protected voter program. I think the secretaries of state at their annual conferences compared notes long ago and they've all sort of copied each other. And that's a part of state law in most states. But the states could do this. I mean, it would be an interesting question not presented here about, you know, at what point is your voter database so riddled with gaps that we are now undermining the purposes of NVRA, but obstacle preemption, you know, is the kind of supple tool for handling that issue. No state's tried to restrict home addresses or party affiliation or voter history? I want to say, actually, I think Illinois has tried to restrict maybe street number. So you could say Lincoln Avenue or Clark Avenue, but not the number. But those are big street. And I think there may be issues there. But yeah, there are some examples. Do any states have an opt out? In other words, you vote and you check a box. Keep my name off the list. Not that I'm aware of. What do you think of that? New Mexico do that? I think I think that'd be a problem if because I mean, obviously, these safe at safe at home programs, they are opt out programs that apply to a specific instance where, you know, this person really is at risk. And, you know, the risk to that person is very high. The impact on the integrity of the overall voter roll that we are looking at is low because there's not that many people who actually fall into those categories. But but I mean, if it were just a blanket opt out, then I think we'd have a much bigger problem. Blanket meaning anyone can choose to anyone. Yeah, anyone can choose. It is a little bit of a penalty, though, to vote if you don't want your name on that list and you don't want your neighbors. Hey, I bet you voted for Joe Small. Right. That was a good invitation. Well, I actually know somebody with that voice. But but no, I do think I mean, you know, you pay states that say you should register, you know, my home state, Missouri, you don't register Republican or Democrat. You can decide each time I'm going to go vote in the Democrat primary. I'm going to vote Republican. And so but states that make you do that. I mean, there's a cost imposed there. But, you know, we don't see statutes striking down those kind of registration regimes. I know we're just going to skip it around, but going back about 10 minutes ago on, do you agree with the assumption that if we decide that the NVRA preempts the state statute that that that ends your claim? I mean, that that resolves your claim to your satisfaction, that that would remove any impediment to you publishing the data? Yes. To the extent that the preemption extends to public disclosure, it would, because at that point there's just there's nothing left. I mean, we would we would have federal law saying that we can do this and we would do it. And I'm sorry. I'm just I'm not even aware of the theory. It's not been articulated to me how we could be in trouble other than by the statutes that are being preempted. Is the data that you originally published on the Internet, is that still available on the Internet? You know, I'm actually not sure of that. Well, it would be. It would be because as they update it, they'll show more and more elections in which you voted. And so I believe you may not be able to look at the user facing web page and tell which is the old and which is the new data. But the data that you published, has it been taken off? Oh, it's been taken off multiple times. I mean, we took it off. That's what I'm trying to ask. Oh, I'm sorry. Yes. Yeah. The original data was it was taken off as soon as we saw the ProPublica piece and saw that we were going to prosecute. We took it off. Then after we got the preliminary injunction, we put it back on. Then when this court stayed the preliminary injunction, that very day we took it off. OK. OK. So we've tried to be careful. Can you tell me precisely what is the viewpoint that is subject to viewpoint discrimination? What is it? It's actually, I think there's probably a couple of viewpoints. But the main viewpoint is that voters ought to have access to this and that when you look at the secretary's data, there are concerns about how the records are being kept. That's the viewpoint. I mean, so there's two things that go hand in hand. Wouldn't the viewpoint be voters? That's the relevant investigation, isn't it? And you're saying that the government is discriminating against you because they don't like the way you're using this information. That's right. It's not an access question. It's a publication question. It's well, it is a publication question. But there's I tried to kind of break it apart into two points. One is our I should have said maybe I kind of mumbled our view that voters should be able to access the data and that when one does access the data, here's what you see about the secretary's record keeping. Is it a fact question for the district court that you were targeted because of that policy outlook? Yes, that is a required showing. And it's a there's a question of historical fact. But then ultimately, there's a question of constitutional fact to see whether those meet the standard. Why don't why don't you need a comparator group that says everything is going perfectly down in New Mexico. There hasn't been a single mistake made. And the New Mexico authorities give them the information. Oh, thank you. We love your viewpoint. But then when you raise criticisms, I say no way you're out to cause problems. Then I get it. There's a viewpoint discrimination. But the comparator case law was I think it was from the employment context where you've got many, many different circumstances. But really the comparator evidence is just kind of a version of circumstantial evidence where you don't have something that's that's direct that says I'm doing this because of your viewpoint. I mean, and so I don't think there's any case law that says you have to always have that kind of circumstantial evidence in this kind of a case where, you know, it's basically request for data and there's not there are not that many of them. It's basically some for profit companies and then the major parties. Do you think it's legitimate, even if you say this isn't New Mexico's viewpoint, would it be a legitimate viewpoint for a state to say we don't want to give this information up because we're concerned that the minority party is going to get their doors knocked on? Let me see your citizenship papers or whatever else. And we're just not going to put up with that. So that's our viewpoint. You don't get it. Would that not be legitimate? Unfortunately, depending on exactly how they articulate that, I mean, there are statutes that already punish harassment of voters or trying to force people to register or there's federal statutes and probably I think some state statutes. So it'd be one thing for New Mexico to say, you know, this is happening. We're going to punish that specific conduct. But to say, you know, people like you seem more likely to do that, that would be a problem. I mean, that would that would be viewpoint discrimination. Thank you, counsel. Appreciate your argument. We have Mr. Marquez had some rebuttal. Thank you, Your Honors. I just I just have a couple of follow ups regarding what Mr. Grimes said. So first of all, he went into a great not really much detail, but he described how he intended to how VRF supposedly uses this data to crowdsource, to allow people to investigate their neighbors and friends and find inaccuracies in the voter rolls. However, they have not I don't think there's anything in the record and they certainly didn't bring it up regarding any successes in all 33 states where they have this data available. There is no they have not provided any sort of evidence that this is actually being done. And what does that matter? Well, I think under under the recent determinations regarding standing under the PILF, the PILF cases, Pennsylvania and Michigan, they have stated that it's very it's kind of difficult to obtain standing. And they without evidence that and they the Third Circuit said, well, without evidence that PILF had concrete plans to imminently pursue a desired course of action, bearing a nexus to an interest Congress sought to protect that was hindered only by the secretary's refusal to turn over the records. PILF has no standing. They don't describe how they're going to do anything, what they're going to do, what how how this system really works. They don't whether this system works. And harassment and voter harassment is most assuredly not what the NVRA was looking to accomplish. Finally, you've told this organization that they're violating the law. Yes, we I don't think those were the facts of PILF. Here they're here. They don't have to speculate whether they're the government thinks they're covered by the law. You say that you say they are and well, they violate the threat of prosecution. And they in response to the threat they took, you know, they removed their data from from their website. I see my time is up. All right. So they they violated the law because well, certainly somebody violated the law because when the data was originally received, it was there was an affidavit and it wasn't under NVRA, by the way. It was just through the New Mexico Election Code. NVRA didn't come into it when they when they received the data. They worked with another organization, but they were working with them. It wasn't a arm's length transaction between them. There was an affidavit signed saying it wasn't going to be disclosed. And then it was disclosed. So there was an investigation as to who violated the law and VRF's role in in this violation because somebody committed essentially committed perjury because this affidavit was done. They signed an affidavit and then they disclosed it. So certainly they violated the law in that sense. But that wasn't an NVRA request. That was just a simple request under the election code. And before you sit down with respect to the injunction, is Mr. Grimes correct that the injunction is currently structured would protect them from enforcement under the New Mexico statute? Well, the federal, the district court decision? Yes. Currently, yes, that would prevent them from, as it stands now, they have held that this statute is preempted by the NVRA. So yes. Okay. Thank you, counsel. We appreciate your arguments. Counselor excused and the case is submitted. Thank you very much, Your Honors.